**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RENEE C BROWN, | ) | CASE NO. 3:22-CV-01441-CEH |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

## I.       Introduction

Plaintiff, Renee C. Brown ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 9). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

## II.      Procedural History

Claimant filed applications for POD and DIB on April 17, 2020, alleging a disability onset date of February 18, 2018. (ECF No. 7, PageID #: 42). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On November 2, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). The ALJ issued a written decision finding Claimant was not disabled on January 28, 2022. (*Id.* at PageID #: 39).  The ALJ's

1

decision became final on June 16, 2022, when the Appeals Council declined further review.  (*Id.* at PageID #: 28).

Claimant filed a complaint in the U.S. District Court for the Northern District of Ohio on August 12, 2022 to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11, 13). Claimant asserts the following assignments of error:

> (1) The ALJ erred when she failed to find at Step Three of the Sequential Evaluation that Brown satisfied the criteria of Listing 11.02B in accordance with Social Security Ruling 19-4p.
>
> (2) The ALJ committed harmful error at Step Four of the Sequential Evaluation when she improperly relied on the vocational witness and found that Brown could perform her past work as a general clerk.
>
> (3) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and found that the effect of the combination of Brown's symptom allowed her to engage in substantial gainful activity on a full-time and sustained basis.

(ECF No. 10, PageID #: 893).

## III.    Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant testified she has chronic pain, for which she has attended physical therapy. The claimant testified she also has difficulty with reaching overhead. The claimant alleged that therapy does sometimes provide some relief of symptoms. She further testified her weight limits her ability at times to perform prolonged walking. The claimant testified she is also taking a new medication for pain, gabapentin, which she alleged causes drowsiness. She also reported she takes a muscle relaxer for pain symptoms, which also causes drowsiness.
>
> Regarding headaches, the claimant testified she takes medications

2

> (Imitrex) along with Aleve. She alleged she takes Imitrex twice
> monthly due to migraine headaches. She alleged the medication
> causes her to feel sick, so she only takes it as a last resort. The
> claimant testified her insurance does not cover injections for
> headaches. She testified she has headaches that occur 1 to 2 times
> weekly and can last from 1 day to 4 days. The claimant testified that
> laying down helps relieve symptoms to some degree, and she avoids
> light and noise.
>
> She testified that she lives at home with her 15-year-old daughter
> and is able to perform some household chores and tasks. However,
> she testified that her daughter has to help with sweeping or mopping.
> She testified that she cooks dinner when she can and does some
> laundry. She also testified she changes the bed sheets and takes her
> daughter to school daily. However, she alleged sometimes she is
> unable to do so because of symptoms and someone else picks her
> up.
>
> On a typical day, the claimant testified she sits or lays down, does
> some housework in between resting. The claimant explained when
> she is sitting, she reads mystery books or watches TV. She denied
> difficulty with following along when watching TV. She also alleged
> she tries to attend some of her daughter's sporting events but alleged
> she does not make it to them all. She also testified she exercise three
> times weekly, up to 30 minutes, to try and help her fibromyalgia
> symptoms.

(ECF No. 7, PageID #: 49–50).

A vocational expert also testified at the administrative hearing. They opined that Claimant

could work their past position as a general clerk with an occasional overhead reaching restriction.

(*Id.* at PageID #: 94–95). They also opined that Claimant could perform three alternative jobs with

such a restriction. (*See id.* at PageID #: 88, 89, 90).

## B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> Turning to the objective medical evidence, the record supports the
> claimant has a history of chiropractic treatment for chronic
> headaches and neck pain symptoms. (3F/7-8). In March 2018, the
> record supports the claimant was participating in treatment with a
> primary care physician. (4F/42-45). On exam, it was noted that she

had normal range of motion, no edema, and normal cranial nerve deficit. (Id.). At her next appointment in January 2019, the claimant reported lower right back pain and muscle tenderness of the lower spine; however, she was noted to have had normal range of motion, no edema, and no bony tenderness. (4F/34-37). Thus, she was referred for physical therapy for her alleged pain symptoms. (Id.). Physical therapy records support the claimant participated in 4 visits in January 2019, but was discharged from therapy on February 13, 2019, when she failed to return for the remainder of her appointments. (See 19F/1-7).

Treatment notes from September 2019 showed an assessment of fibromyalgia and she was prescribed Ultram for pain symptoms. (4F/32-33). Further, the record supports on September 23, 2019, the claimant was admitted for emergency treatment related to alleged chest pain, fatigue, and shortness of breath. (4F/12-32). The record supports the claimant underwent testing, a stress test, and an echocardiogram, which were normal, but on exam she reported lightheadedness and feel extremely fatigued. (4F/9-12). In October 2019, for the claimant's alleged pain symptoms, she underwent chiropractic treatment. (3F/11-15).

In October 2020, the record supports the claimant was reevaluated for chronic neck and headache pain. (10F/5-9). At the appointment, the claimant reported headaches occurring a few times a week and lasting all day, with pain in her head down to her shoulders. (Id.). She was noted to have minimal response to her current treatment (Imitrex, Norvasc, and Zanaflex) and her medications were adjusted; specifically, Topamax was added. (Id.). It was further noted that she had a history of rebound headaches due to medications. (10F/5-9). On exam, the claimant was noted to have had normal gait, intact sensation, normal muscle tone and strength, normal memory, but with mild to moderate tenderness over the lower cervical spine and trapezoid muscles bilaterally. (Id.). She was also referred to physical therapy for her pain symptoms. (Id.).

Treatment record support the claimant participated in physical therapy in November 2020 and December 2020 for her neck pain and headaches symptoms. (12F/5-8, 14F/5-6/7-8, 15F/5-6, and 16F/20-23). On December 21, 2020, the claimant also presented for a neurological assessment related to her headaches. (15F/6-11). On exam, she was noted to have had no confusion or aphasia, normal memory, normal muscle tone, no focal weakness, normal (5/5) strength, and normal gait. (Id.). Yet, she was also observed to have had moderate tenderness of the cervical paraspinal muscles and trapezius muscles bilaterally and mild to moderate tenderness over

4

the temporalis muscles on both sides. (Id.). She was assessed with fibromyalgia and chronic tension headaches, possibly migraines and her medication (Zanaflex) was increased in dosage. (Id.). She also underwent x-rays of the cervical spine on December 21, 2020 which showed evidence of somewhat limited mobility on extension and of the upper cervical spine on flexion; mild anterolisthesis C3 on C4 and C5 on C5, increased slightly with flexion; intervertebral disc space narrowing C5-C6 and C6-C7; mild spondylosis seen at C4-C7; partial facet fusion of C2-C3; multilevel facet arthropathy, most severe at C3-T1; some impingement on the neural foramina, best seen at C5-C6 and C6-C7 on the left; no loss of vertebral height; mild degenerative changes of the atlantoaxial joints; and no destructive or blastic lesion.

Further, in February 2021, the claimant was evaluated by pain management for symptoms control related to fibromyalgia, cervical pain, and her headaches. (16F/3-19). She reported headaches occurring several times weekly and indicated she has ongoing intermittent neck pain and bilateral shoulder pain. (Id.). On exam, it was noted that the claimant had tenderness and limited range of motion of her cervical spine; however, she was also observed to have had normal muscle tone and strength; normal sensation; and normal gait. (Id.). Further, it was indicated that she had mild to moderate tenderness over lower cervical paraspinal muscles and trapezius muscles bilaterally along with tender points on scapular region supraspinatus and pyriformis areas. (Id.). For treatment of her symptoms the record supports that acupuncture was provided and her medications were adjusted (Toprol and magnesium trials started for her headaches and Norvasc dose was cut in half). (Id.).

The record supports no further treatment until the claimant established with a new primary care provider in September 2021. (21F/1-8). At that time, the claimant was assessed with fibromyalgia and she was started on new medication (gabapentin) for her pain symptoms and Zanaflex was also continued. (Id.). On exam, the claimant was noted to have had tenderness with multiple myalgias present, but no edema, normal attention, normal cognition, and it was noted that she presented as mildly anxious. (Id.).

(*Id.* at PageID #: 50–51).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2. The claimant has not engaged in substantial gainful activity since February 18, 2018, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: tension headache/migraine/drug induced headache; fibromyalgia; and cervical degenerative disc disease. (15/13-16); (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl. She must be able to alternate positions, at his/her option, every 45 minutes for 1-2 minutes so long as she is not off task or has to leave the vicinity of the workstation. With the bilateral upper extremities, she can occasionally reach overhead. She can have occasional concentrated exposure to unprotected moving mechanical machinery and cannot work around vibrations or unprotected heights. She cannot have more than occasional concentrated exposure to noise levels that are in excess of the moderate noise levels defined in the Dictionary of Occupational Titles. She can occasionally perform any commercial driving.

6. The claimant is capable of performing past relevant work as a general clerk (DOT 209.562-010, svp 3, light as generally performed and sedentary as actually performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. In the alternative, for the period prior to March 9, 2020 (prior to the claimant turning 55 years-old), although the claimant was capable of performing past relevant work, there were also other jobs existing in the national economy that she was able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process for the period prior to March 9, 2020.

8. The claimant has not been under a disability, as defined in the Social Security Act, from February 18, 2018, through the date of this decision. (20 CFR 404.1520(f)).

(*Id.* at PageID #: 44–56).

## V.     Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination

of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  Discussion

Claimant raises three issues on appeal. First, she argues the ALJ erred in finding that Claimant did not satisfy the criteria of Listing 11.02B. (ECF No. 10, PageID #: 893). Second, she argues they committed harmful error at Step Four by relying on the vocational expert's testimony that Claimant could perform past work. (*Id.*). Finally, Claimant contends the ALJ did not properly apply Social Security Ruling ("SSR") 16-3p. (*Id.*). The Court will review each assignment of error below.

### 1.  Listing 11.02B

Claimant first argues that the ALJ erred in finding her headaches did not medically equal Listing 11.02B since she claims the evidence was "more than sufficient" to meet the requirements of SSR 19-4p. (*Id.* at PageID #: 901 (citing *Harper v. Comm'r of Soc. Sec.*, 2021 WL 2383833, at * 12 (N.D. Ohio May 25, 2021)). In support, she cites medical records throughout the period at issue that indicate the nature and frequency of her headaches, prescribed medications, medication

side effects, and the impact of headaches on her daily activities. (*See id.* PageID #: 902–04). The Commissioner argues that Claimant has failed to produce "any of the requisite evidence" to establish medical equivalency under SSR 17-2p and challenges her reliance on *Harper*. (ECF No. 11, PageID #: 929).

At Step Three, an ALJ considers whether a claimant's impairment is severe enough to prevent them from completing gainful activity. § 404.1525. If an impairment meets or equals a "Listing of Impairments," they are presumed disabled. *Id.*; *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013) ("A claimant who meets or equals a listed impairment is presumptively disabled, without consideration of her age, education, or work experience.").

"To make a finding of medical equivalence, an ALJ must have either: 1) a prior administrative finding from an agency doctor that supports the finding of medical equivalence, or 2) medical expert evidence; or 3) a report from the appeals council medical staff to support the finding of equivalence." *Strittmatter v. Kijakazi*, 2023 WL 207907, at *5 (N.D. Ohio Jan. 17, 2023); *see* SSR 17-2p, 2017 WL 3928306, at *3 (S.S.A. Mar. 27, 2017).

"Primary headache disorder is not a listed impairment in the Listing of Impairments." SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). However, "Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder." (*Id.*). Listing 11, Paragraph B, "requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.*

ALJs consider the following factors in determining whether a headache disorder equals Listing 11.02B:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events;

9

> adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*; *see also Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *3 (6th Cir. May 26, 2023) (discussing ALJs' consideration of Listing 11.02B headaches).

While the ALJ acknowledged Listing 11.02, they found that Claimant's headaches did not meet the listing. (*See* ECF No. 7, PageID #: 48). They explained their finding with the following rationale:

> the evidence does not provide a detailed description of typical migraine pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. Moreover, there is no concrete evidence of alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day

(*Id.*).

This analysis is consistent with SSR 19-4p which requires ALJs to consider, in part, whether a "detailed description . . . of a typical headache event" supports the existence of "dyscognitive seizures occurring at least once a week for at least 3 consecutive months." SSR 19-4p, 2019 WL 4169635 at *7. The ALJ here found no such report in the record, nor any "concrete evidence" that Claimant's headaches caused any alterations of awareness, loss of consciousness, unconventional behavior, or activity interference. (ECF No. 7, PageID #: 48).

Claimant does not contest this. She does not point to any record or other evidence of dyscognitive headaches. She also does not point to records of alterations of awareness, loss of

consciousness, or unconventional behavior. While she points to activity interference, the ALJ discounted her subjective complaints, as discussed below, and substantial evidence supports their decision. (*See* ECF No. 10, PageID #: 903).

Furthermore, the ALJ reviewed records demonstrating "normal" cognitive functioning. They noted that a December 2020 provider found Claimant alert and oriented, demonstrating "normal" memory, and free from confusion or aphasia. (ECF No. 7, PageID #: 51 (referencing ECF No. 7, PageID #: 793)). The same doctor also noted Claimant had no trouble concentrating and did not experience seizures. (*Id.* at PageID #: 790). The ALJ noted that while Claimant's chiropractor reported a long history of debilitating headaches, he had only treated Claimant twice and based this statement on her subjective reports, which the ALJ later discounted. (*Id.* at PageID #: 51–52). Moreover, they found that even the chiropractor did not provide functional limitations to accommodate Claimant's headaches. (*Id.*). Finally, only one state agency consultant recommended headache-related restrictions for the RFC. (*See id.* at Exs. 2A, 4A). Therefore, substantial evidence supports the ALJ's finding that Claimant's headaches did not equal Listing 11.02(B).

While Claimant cites numerous records referencing the frequency and nature of her headaches, she neglects to point out that these points are generally based on her subjective reports to providers. (*See* ECF No. 10, PageID #: 902–03). As the ALJ discounted the severity of her allegations later in the opinion, it is clear that they questioned the legitimacy of such allegations. (*See* ECF No. 7, PageID #: 53 (discounting Claimant's allegations)). Moreover, Claimant points to no objective records indicating any "premonitory symptoms, aura . . . accompanying symptoms" of her headaches, as SSR 19-4p discusses.

To the extent that Claimant attempts to suggest and support an alternative reading of the

11

record, this argument fails. Even if substantial evidence supports an alternative finding, this is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Finally, the Court agrees with the Commissioner that *Harper* is distinguishable from this case. (*See* ECF No. 11, PageID #: 929). There, the claimant challenged the ALJ's treatment of her subjective allegations related to migraines, an RFC challenge. 2021 WL 2383833 at *10–11. As SSRs 17-2p and 19-4p were not implicated in the *Harper* court's analysis, Claimant's reliance on the case is misplaced.

Substantial evidence supports the ALJ's finding that Claimant's headaches did not equal Listing 11.02B. This Court therefore will not disturb the ALJ's decision.

### 2.  Past Relevant Work

Claimant next argues the ALJ erroneously accepted on the vocational expert's ("VE") experience as a proper basis for their opinion and testimony at the administrative hearing. (ECF No. 10, PageID #: 906). Additionally, she argues the ALJ erred in finding she could perform her past job since it required "frequent reaching" and the RFC had an "occasional overheard reaching" restriction. (*Id.*). The Commissioner admits there was a conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony but argues that the VE's experience reasonably resolved the issue and supplemented the DOT. (ECF No. 11, PageID #: 932).

At the administrative hearing, the ALJ asked the VE whether Claimant could perform her past job as a general clerk with a hypothetical set of restrictions, including "occasionally reach overhead." (ECF No. 7, PageID #: 94). The VE testified that Claimant could perform her past work with such restrictions and provided three additional jobs she could work as well. (*Id.* at PageID #: 89, 94). Toward the end of the hearing, the VE also testified about directional reaching restrictions. While the DOT did not contain directional reaching restrictions, such as "reaching in any direction" or "reaching overhead," the VE testified that they could opine on such limitations based on their experience. (*Id.* at PageID #: 95). They testified that while occasional reaching in any direction would preclude Claimant's past work, Claimant would still be able to perform the job with only overhead occasional reaching. (*Id.* at PageID #: 94–95).

A VE's testimony about a Claimant's work abilities constitutes substantial evidence in support of an ALJ's Step Four and Five findings. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she 'can and cannot do,' there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination."). Likewise, VE testimony is not confined to the contents of the DOT and may also encompass their personal experience. SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.").

Here, the VE testified that Claimant could perform past work with an occasional overhead reaching restriction. (ECF No. 7, PageID #: 94–95). Their testimony was supported by their

experience—an acceptable source of information pursuant to SSR 004-p—and constitutes substantial evidence. *See Webb*, 368 F.3d at 633. Accordingly, substantial evidence supports the ALJ's finding that Claimant could perform past relevant work, and this Court will not disturb the finding.

Despite Claimant's argument that the position required frequent reaching, this does not impact the ALJ's finding. (*See* ECF No. 10, PageID #: 906–07). While they limited Claimant to occasional overhead reaching, they did not adopt any additional reaching restrictions, finding Claimant had unlimited reaching capability outside of the overhead limit. (*See* ECF No. 7, PageID #: 48–49). Again, as the VE testified that Claimant could still perform past work with an occasional overhead reaching restriction, and Claimant is not limited in any other direction, this constitutes substantial evidence supporting the ALJ's finding.

### 3. SSR 16-3p

Claimant finally argues the ALJ "failed to articulate any supportable rationale" for discounting her subjective complaints, including pain. (ECF No. 10, PageID #: 911–12). She further contends that the ALJ failed to provide "specific reasons" for their finding or a logical bridge between the evidence and their determination. (*Id.*). Finally, because the ALJ "ignored" evidence of Claimant's impairments, Claimant argues the opinion requires remand. (*Id.* at PageID #: 913).

The Commissioner rejects Claimant's argument as an attempt to reweigh the evidence or support an alternative finding. (ECF No. 11, PageID #: 936). Reviewing the ALJ's rationale for rejecting the opinion, the Commissioner points out that the ALJ reviewed several SSR 16-3p factors including the medical record, daily activities, treatment, medication, as well as mitigating factors. (*Id.* at PageID #: 934–35).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation* adopted, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

15

Claimant states that "the ALJ failed to articulate any supportable rationale for her finding that [her] statements . . . were broader and more restricted than was established in the medical evidence." (ECF No. 10, PageID #: 912).

The ALJ specified Claimant's subjective complaints:

> At the hearing, the claimant testified she has chronic pain, for which she has attended physical therapy. The claimant testified she also has difficulty with reaching overhead. The claimant alleged that therapy does sometimes provide some relief of symptoms. She further testified her weight limits her ability at times to perform prolonged walking. The claimant testified she is also taking a new medication for pain, gabapentin, which she alleged causes drowsiness. She also reported she takes a muscle relaxer for pain symptoms, which also causes drowsiness.
>
> Regarding headaches, the claimant testified she takes medications (Imitrex) along with Aleve. She alleged she takes Imitrex twice monthly due to migraine headaches. She alleged the medication causes her to feel sick, so she only takes it as a last resort. The claimant testified her insurance does not cover injections for headaches. She testified she has headaches that occur 1 to 2 times weekly and can last from 1 day to 4 days. The claimant testified that laying down helps relieve symptoms to some degree, and she avoids light and noise.
>
> She testified that she lives at home with her 15-year-old daughter and is able to perform some household chores and tasks. However, she testified that her daughter has to help with sweeping or mopping. She testified that she cooks dinner when she can and does some laundry. She also testified she changes the bed sheets and takes her daughter to school daily. However, she alleged sometimes she is unable to do so because of symptoms and someone else picks her up.
>
> On a typical day, the claimant testified she sits or lays down, does some housework in between resting. The claimant explained when she is sitting, she reads mystery books or watches TV. She denied difficulty with following along when watching TV. She also alleged she tries to attend some of her daughter's sporting events but alleged she does not make it to them all. She also testified she exercise three times weekly, up to 30 minutes, to try and help her fibromyalgia symptoms.

16

(ECF No. 7, PageID #: 49–50). The ALJ later provided a unified statement of reasons for discounting credibility:

> [W]hile the claimant has medically determinable physical impairments that could reasonably cause some symptoms and limitations, the undersigned finds the allegations are broader and more restricted than is established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability
>
> [. . .]
>
> The onset, nature, intensity, and duration of symptoms, as well as participating and aggravating factors, have all been factored into the residual functional capacity assessment set forth herein for this claimant. (SSR 16-3p). The undersigned has also evaluated whether the claimant's allegations and statements are consistent with other evidence of record, including statements made by the claimant to providers or others, and statements and observations of medical and non-medical sources. Considering these factors, the undersigned has also found that the claimant's allegations are not fully consistent with the entire record.
>
> Specifically, the record does not fully corroborate the claimant's allegations of physical health symptom severity. As detailed above, the record supports the claimant participated in outpatient conservative treatment (pain medication, physical therapy, and trigger point injections) for her cervical degenerative disc disease, headaches, and fibromyalgia. No further or more aggressive treatment is noted for these impairments during the adjudicated period. Additionally, the record supports although the claimant was noted to have had tenderness on exam at multiple appointments and limited range of motion at one appointment, she was also consistently noted to have had normal strength, normal muscle tone, normal sensation, and normal gait. (4F/34-37/42- 45, 10F/5-9, 15F/6-11, 16F/3-19, and 21F/11). Additionally, her imaging study of record supported multilevel degenerative changes, but did not show evidence of significant stenosis or nerve root compromise. (15F/13-16). Furthermore, her treatment of record was sporadic in nature and did not show or support the level of severity that the claimant alleged at the hearing. If her symptoms were as severe as

17

she alleged, one would expect to see more consistent treatment and/or an increase in the treatments recommended. However, the undersigned finds that the level of primarily conservative, outpatient, intermittent treatment is generally not consistent with the severity of symptoms the claimant has alleged for the entire adjudicated period.

(*Id.* at PageID #: 52–53).

The ALJ discussed Claimant's mental impairments and symptoms at length throughout their opinion. (*See id.* at PageID #: 50–52). They noted that Claimant had a history of chiropractic treatment for chronic headaches and neck pain and reported headaches occurring a few times every week and lasting all day in October 2020. (*Id.* (citing Exs. 3F, 10F)). In December 2020, she participated in a neurological assessment for headaches and demonstrated normal memory and no confusion or aphasia. (*Id.* (citing Ex. 15F)). The ALJ observed that Claimant was evaluated for pain management of several conditions, including headaches, in February 2021, and she reported experiencing several headaches throughout each week. (*Id.* (citing Ex. 16F)).

The ALJ also reviewed Claimant's physical impairments, including fibromyalgia and degenerative disc disease, throughout their decision. The noted a September 2019 assessment showed fibromyalgia, for which Claimant was prescribed Ultram for resulting fibromyalgia-related pain. (*Id.* (citing Ex. 4F)). In an October 2020 record, the ALJ observed that Claimant demonstrated "normal" gait, muscle tone, and strength, but "mild to moderate" tenderness over the lower cervical spine. (*Id.* (citing Ex. 10F)). She was again observed to have "moderate tenderness" of the cervical paraspinal musicale in December 2020 and again assessed with fibromyalgia. (*Id.*). The ALJ noted that in February 2021, Claimant was evaluated for pain management related to fibromyalgia symptoms and cervical pain. (*Id.* (citing Ex. 16F)). She was again assessed for fibromyalgia in September 2021. (*Id.* (citing Ex. 21F)).

The ALJ also discussed Claimant's prescription medications to treat headaches and fibromyalgia-related pain. (*Id.*). As mentioned above, the ALJ noted Claimant was prescribed Ultram for fibromyalgia pain in September 2019 and underwent chiropractic treatment by October 2019. (*Id.* (citing Exs. 3F, 4F)). A provider noted "minimal response" to Imitrex, Norvasc, and Zanaflex in October 2020 and added Topomax to treat headaches, which the ALJ observed. (*Id.*). The ALJ also noted that Claimant experienced "rebound headaches" in response to medications. (*Id.*). In December 2020, a provider increased Claimant's Zanaflex dosage to treat chronic tension headaches, and by February 2021, she began Toprol and magnesium while halving her Norvasc dose. (*Id.*). Aside from the medical records, the ALJ also noted that Claimant testified she takes Gabapentin, which she alleged caused drowsiness, and a muscle relaxer to treat pain. (*Id.* at PageID #: 49). For headaches, the ALJ noted that Claimant testified she takes Imitrex and Aleve, despite Imitrex causing nausea.

The ALJ also reviewed Claimant's general treatment throughout the period at issue. They noted that Claimant received chiropractic care and attended at least four physical therapy sessions to treat her pain. (*Id.* at PageID #: 50–51 (citing Exs. 3F, 4F)). Observing that Claimant was admitted for emergency treatment[1] in September 2020, the ALJ also referenced subsequent chiropractic treatment in October 2020. (*Id.* (citing Ex. 4F)). Finally, they also discussed Claimant's acupuncture treatment in February 2021. (*Id.* (citing Ex. 16F)).

In reviewing Claimant's allegations of symptoms, the ALJ noted factors that mitigated the pain. They noted that laying down relieves headache pain and that Claimant avoids light and noise

---

[1] The ALJ noted that the emergency treatment was related to alleged chest pain, fatigue, and shortness of breath. (*See* ECF No. 7, PageID #: 50).

19

to avoid such pain. (*Id.*). Additionally, the ALJ found that Claimant testified that physical therapy provided pain relief. (*Id.* at PageID #: 49).

Elsewhere, the ALJ noted Claimant's testimony of daily activities including thirty minutes of exercise three times a week, attending her daughter's sporting events, and housework. (*Id.* at PageID #: 50). Claimant also testified to reading and watching television, as well as attending physical therapy. (*Id.* at PageID #: 49–50).

After reviewing the medical record and Claimant's testimony, the ALJ provided several reasons for discounting her allegations of disabling symptoms. They found that Claimant generally participated in conservative outpatient treatment such as pain medication, physical therapy, and trigger point injections to treat fibromyalgia, cervical degenerative disc disease, and headaches. (*Id.* at PageID #: 53). The ALJ noted that treatment was also "sporadic" and "intermittent" and did not support the intensity or severity of symptoms Claimant alleged she experienced. (*Id.*). Next, the ALJ reasoned that Claimant was repeatedly noted to have "normal" muscle tone, strength, sensation, and gait. (*Id.* (citing Exs. 4F, 10F, 15F, 16F, 21F)). Finally, as her imaging study did not demonstrate "significant" stenosis or nerve root compromise, the ALJ found that the record did not support the severity of her complaints. (*Id.*). Substantial evidence supports the ALJ's findings and rationale for discounting Claimant's subjective allegations. Moreover, based on the ALJ's recitation of the record and clear rationale for discounting the allegations, the Court finds that a logical bridge exists between the record and their credibility finding.

Claimant specifically argues that the ALJ did not consider her symptoms from fibromyalgia or cervical degenerative disc disease. (ECF No. 10, PageID #: 911). However, as discussed in the review of the decision above, the ALJ frequently referenced these impairments and their symptoms throughout the opinion and explicitly referenced each condition in discounting

20

the severity of Claimant's allegations. (*See* ECF No. 7, PageID #: 50–51, 53 ("As detailed above, the record supports the claimant participated in outpatient conservative treatment . . . for her cervical degenerative disc disease, headaches, and fibromyalgia."). The Court therefore rejects this claim as well as Claimant's argument that the ALJ did not consider her conditions and their symptoms in combination with each other. (*See* ECF No. 10, PageID #: 911). The opinion is littered with cross-referenced symptoms and many medical records discussed Claimant's combination of physical and mental symptoms throughout the period at issue. (*See* ECF No. 7, PageID #: 50–51 (discussing physical and mental health symptoms from Exs. 3F, 4F, 10F, 12F, 14F, 15F, 16F, 21F)). The ALJ reviewed these records and substantial evidence supports her assertion to this effect.

The Court also agrees with the Commissioner that Claimant attempts to reweigh the record evidence in support of their claim. *McQuade v. Comm'r of Soc. Sec.*, No. 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022) ("But the Court does not reweigh evidence when reviewing an ALJ's determination."); *Avers v. Kijakazi*, No. 3:20-CV-01433, 2021 WL 4291228, at *5 (N.D. Ohio Sept. 21, 2021) ("[T]he court does not review the evidence de novo, make credibility determinations, or weigh the evidence."). Likewise, Claimant's exhaustive recitation of the record merely highlights that there may be substantial evidence to support an alternative conclusion which is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright*, 321 F.3d at 614 (quoting *Key*, 109 F.3d at 273); *see Buxton*, 246 F.3d at 772.

Substantial evidence supports the ALJ's decision to discount Claimant's subjective allegations. Thus, the Court will not disturb the opinion.

## VI.     Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

Dated: August 28, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE